**FILED**
**CLERK**

9/6/2012 11:31 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
EMERALD ASSET ADVISORS, LLC

Plaintiff,

-against-

H. CY SCHAFFER, SUSAN WONG,
MASTERMIND VENTURE PARTNERS,
SHANE A. SWETEL, SELECTIVE
DEVELOPMENT, LLC, WALTER ROSS, and
ROSS PACIFIC TRADE CORPORATION,

Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-CV-1871 (ADS)(WDW)

<u>**APPEARANCES:**</u>

**Jeffrey L. Rosenberg & Associates, LLC**
*Attorneys for the Plaintiff*
425 Park Avenue, 5th Floor
New York, NY 10022
        By:  Jeffrey L. Rosenberg, Esq., Of Counsel

**Pro Se Defendant**
H. Cy Schaffer
P.O. Box 777161
Henderson, NV 89077

<u>**NO APPEARANCE**</u>
Susan Wong
Mastermind Venture Partners
Shane A. Swetel
Selective Development, LLC
Walter Ross
Ross Pacific Trade Corporation

**SPATT, District Judge.**

        The Plaintiff Emerald Asset Advisors, LLC ("Emerald" or "the Plaintiff") commenced

this diversity action against the Defendants H. Cy Schaffer ("Schaffer" or "the Defendant"),

Susan Wong, Mastermind Venture Partners ("MVP"), Shane A. Swetel, Selective Development,

LLC ("Selective"), Walter Ross, and Ross Pacific Trade Corporation ("Ross Pacific") (collectively the "Additional Defendants"), seeking the return of $200,000 that Emerald transmitted to the Defendant's escrow account as part of a deal where MVP would obtain financing for Emerald's subsidiary company, Eternal Image, Inc. ("Eternal"). Presently before the Court is: (1) a motion by the Defendant Schaffer pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(2) to dismiss the complaint for lack of personal jurisdiction or, in the alternative, for a change of venue pursuant to 28 U.S.C. § 1406 or § 1404(a); and (2) a motion by the Plaintiff for sanctions against Schaffer pursuant to Fed. R. Civ. P. 11. For the reasons set forth below, both motions are denied.

## I. BACKGROUND

### A. Factual Background

Emerald is a limited liability company, formed under the laws of Delaware and qualified to do business in the State of New York. The company is in the business of financing and capitalizing businesses and business ventures through methods such as capital infusions, investments, bridge loans, and debentures. (Compl. at ¶ 5.) The Defendant H. Cy Schaffer is an attorney admitted to practice law in the State of California. In addition, the Complaint states that, upon information and belief, he is also currently practicing law in the State of Nevada and lives there.

The Defendant Susan Wong is a citizen of the State of Connecticut. MVP is a partnership formed and/or existing under the laws of the State of California. The Defendant Shane A. Swetel is a citizen of the State of Nevada. Selective is a limited liability company formed and existing under the laws of the State of Nevada. The Defendant Walter Ross is a citizen of the State of California. Ross Pacific is a corporation formed and existing under the

laws of the State of California, and is allegedly owned and controlled by the Defendant Ross. (Compl. at ¶ 15.)

Emerald's subsidiary company Eternal is a corporation that was formed under the laws of the State of Delaware and maintains its principal office in Michigan. The company is a manufacturer and distributer of branded, licensed funeral products, such as caskets, urns, and vaults. In 2009, Eternal was in need of capital financing in order to expand its business. Specifically, it was looking for financing in the sum of approximately $2 million. Thus, in or about April 2009, Eternal began discussions with Wong and MVP to facilitate a financing arrangement ("the $2 Million Financing"). According to the Complaint, Wong represented that MVP was a sophisticated and experienced financial services and investment banking enterprise, which would be able to accommodate Eternal's financing needs.

After several months of discussions, Wong allegedly explained for the first time to Clint Mytych, President and Chief Executive Officer of Eternal, that Eternal would need to post ten percent of the financing—$200,000.00—as security for the $2 Million Financing because the company was in its early development stages and did not have the asset base required for the deal. Specifically, Eternal was to place the $200,00.00 in an interest bearing escrow account to be maintained by the Defendant Schaffer, as legal counsel for MVP.

Eternal did not have the adequate funds to post the $200,000.00 security deposit. However, one of Eternal's large shareholders—the Plaintiff Emerald—was willing and able to do so. As of November 20, 2009, Emerald owned approximately 145 million shares of Eternal common stock, aggregating approximately ten percent of Eternal's issued and outstanding common stock. Thus, Emerald was a major shareholder of Eternal and would likely derive economic gains obtained from an expansion in Eternal's business.

The Plaintiff's Managing Member, Michael Xirinachs, began to communicate directly with Wong and MVP regarding the security. Wong met with Xirinachs at Emerald's offices in New York in October and November 2009. Wong allegedly represented to Xirinachs and Mytych at that time that if the $200,000.00 security deposit was made, that she and MVP would guarantee at least $1 million in funding, if not the entire $2 million requested. In addition, the Complaint states that Wong represented to Xirinachs that the full balance of the $200,000.00 escrow amount, plus all interest accrued, would be returned to Emerald when the $2 Million Financing was paid off.

On or about November 20, 2009, Wong represented to Mytych and Xirinachs that MVP had completed arrangements to loan the $2 million in financing, as long as the escrow requirement was satisfied. The $200,000.00 was to be deposited in Schaffer's escrow/trust account, because Wong represented that he was acting as the attorney for MVP. Therefore, the Plaintiff, on behalf of Eternal, wired $200,000.00 to the "H. Cy Schaffer Client Trust Account", maintained at Wells Fargo Bank, Beverly Hills, California, via four successive wire transfers in the respective amounts of $75,000.00 on November 24, 2009; $75,000.00 on November 27, 2009; $30,000.00 on November 30, 2009; and $20,000.00 on December 1, 2009.

On December 3, 2009, Wong confirmed to Xirinachs via email that the $2 Million Financing would be available in a few days. Email communications over the next several weeks between Wong and the Plaintiff indicate that Wong was working on the paperwork and continually assured Emerald that the "wires [were] going out." (Compl. at ¶ 55.) However, the $2 Million Financing was never completed.

Thereafter, Emerald made a demand to Wong and Schaffer to return the $200,000.00 escrow deposit, with accrued interest. Both Wong and Schaffer confirmed that the deposit would

be repaid.  However, in or about mid to late December 2009, Schaffer admitted to Xirinachs that the $200,00.00 had been disbursed by him from his client trust account, not for the purposes agreed upon, but for his personal use and that of others, including Wong.

Wong placed the blame for the missing funds on Schaffer.  In addition, Wong allegedly told the Plaintiff that the Defendant Shane A. Swetel transferred some or all of the $200,000.00 escrow deposit for his own purposes.  For example, an email was supposedly sent from Wong to Xirinachs on January 7, 2010, advising him that Schaffer and Swetel had transferred the funds to a third party for the purposes of implementing an unspecified bond deal.  However, also according to the Complaint, Wong knew or should have known that the $200,000.00 had been disbursed by Schaffer, including a $60,000.00 disbursement to her.

Schaffer allegedly promised to repay the Plaintiff on several occasions over the following six month period, from November 2009 through May 2010.  On this basis, Emerald agreed to withhold from instituting legal action against Schaffer and those that acted with him.  During this time, Schaffer recruited his close friend and business associate, the Defendant Walter Ross and his company Ross Pacific Trade Corp., as well as the Defendant Swetel, to assist him in making the repayments to Emerald.  In this regard, the Plaintiff's attorney had several conversations with Schaffer, Ross, and Swetel, regarding the repayment.  According to Emerald, Ross and Swetel were working for the purpose of attempting to induce Emerald to withhold from initiating legal action against Schaffer.  However, once it became clear that the money was not going to be returned, the Plaintiff brought the instant action.

**B.** **Procedural History**

On April 15, 2011, the Plaintiff commenced this action, asserting causes of action for fraudulent and negligent misrepresentations; breach of fiduciary duty; promissory estoppel;

unjust enrichment; conversion; civil conspiracy to commit conversion; aiding and abetting

conversion; and breach of the implied covenant of good faith and fair dealing.

Currently pending before the Court is a motion to dismiss filed by the Defendant

Schaffer, seeking to either dismiss the complaint against him for lack of personal jurisdiction or,

in the alternative, to transfer venue.  In addition, on the basis of this motion, the Plaintiff filed a

motion for sanctions against Schaffer pursuant to Rule 11.

## II.      DISCUSSION

### A.  <u>As to Whether the Case Should be Dismissed Against the Additional Defendants</u>

As an initial matter, the Court must determine whether the named Defendants in this case

have been properly served.  As of today, only one Defendant has actually appeared in this case—

the Defendant H. Cy Schaffer—after an alternative means of service was granted by United

States Magistrate Judge William D. Wall.  However, none of the other Defendants have appeared

in this action, nor, apparently, has the Plaintiff pursued this case against any of the other

Defendants, because no affidavits of service have been filed with this Court.

Therefore, on July 16, 2012, the Court issued an order directing the Plaintiff to show

cause as to why the Court should not dismiss this case pursuant to Fed. R. Civ. P. 41(b) against

Susan Wong, MVP, Shane A. Swetel, Selective, Walter Ross, and Ross Pacific (the "Additional

Defendants") for failure to prosecute.  (<u>See</u> Docket Entry No. 27.)

In response, through its attorney, Jeffrey L. Rosenberg, Esq., the Plaintiff submitted a

Declaration in which Rosenberg states that "despite good faith and due diligence, [the Plaintiff]

has been thwarted in its efforts to effect service on the Additional Defendants, including by their

willful avoidance and/or by their prior effort to hide and/or misstate their addresses".

(Rosenberg Decl. at 1.)  In this Declaration, Rosenberg details his efforts to serve the Additional

Defendants, explaining that summonses were issued as to each defendant. After this was ineffective, he consulted with Stephen Mandel of Lan-West, a forensic computing firm, and retained the services of a private investigator named Robert Clymer and his firm Sin City Private Investigators ("SCPI"). However, despite "diligent efforts", neither Mr. Mandel and Lan-West, nor Clymer and SCPI, were able to locate Wong or the Additional Defendants through the internet and other forensic searches. Rosenberg then goes on to explain that he was put in touch with another investigative firm named Bo Dietl & Associates to attempt to locate the Additional Defendants, that mainly focused on locating and serving Defendant Wong.

Eventually, the Plaintiff was able to obtain the address for Wong's parents through Bo Dietl, and the Alvin Engell Agency was given the task of serving her at this location. However, no affidavit of service has ever been filed with this Court. The Plaintiff contends that because of a new computer system, a copy of the affidavit of service cannot be accessed. Nevertheless, Rosenberg claims that he was advised that service was made on Wong and that, at a minimum, strenuous efforts to serve Wong were implemented.

As for MVP, the Plaintiff has now provided an affidavit of service for this company through an exhibit attached to Rosenberg's Declaration. Thus, it appears that MVP has been served in this action but has not answered or appeared.

As for Swetel and Selective, Rosenberg affirms that its investigators have been unable to discern whether they are actually located at the addresses that were revealed through internet searches, and he has left messages on two different phone numbers that have been listed. However, the Plaintiff has been unable to detail any other additional efforts that have been made to locate either this individual or this company.

As for Ross and Ross Pacific, the Plaintiff's initial attempts to serve this individual and his company at the addresses that were uncovered were unsuccessful. Rosenberg states in his Declaration that the investigative firms the Plaintiff hired have made efforts to locate these Defendants through internet searches, and that that "all reasonable efforts were made to locate these Additional Defendants". However, the Plaintiff has been unable to detail any further efforts that were made to locate these defendants.

In sum, there have been no affidavits of service filed for any of the Additional Defendants other than MVP. According to Rosenberg, both MVP and Wong were served, but he can only provide an affidavit of service for MVP. The lack of an affidavit of service for Wong is blamed on a "law office error" or the result of its process server failing to follow the Plaintiff's instructions. As for Swetel, Selective, Ross, and Ross Pacific, the Plaintiff admits that they have not been served within 120 days of the issuance of the summonses, but emphasizes that this is the result only of the conduct and avoidance of these Additional Defendants. The Declaration states that it is the Plaintiff's plan to attempt to locate the other Additional Defendants by deposing Schaffer.

There is no doubt that if a defendant is not served within 120 days after the complaint is filed, a Court is empowered under Fed. R. Civ. P. 4(m) to dismiss an action against that particular defendant without prejudice or order that service be made within a specified time. A Court may do so upon motion or on its own initiative. See Cioce v. Cnty. of Westchester, 128 Fed. App'x 181, 183 (2d Cir. 2005) ("Rule 4(m) provides that the district court shall, upon motion *or on its own initiative after notice to the plaintiff*, dismiss without prejudice any action in which service of the summons and complaint has not been made upon a defendant within 120 days after the filing of the complaint.") (emphasis added); see also Zapata v. City of New York,

502 F.3d 192, 196–97 (2d Cir. 2007) (holding that district courts have discretion to grant extensions of time to serve process, even in the absence of good cause).

However, if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. See Simmons v. Abruzzo, 104 F.3d 350, at *1 (2d Cir. 1996) ("After the 120 days, the district court can either dismiss the complaint or extend the time for service upon a showing of good cause for failure to serve."); Smith v. New York City Police Dept., No. Civ. 15436, 2008 WL 4449333, at *2 (S.D.N.Y. Oct. 2, 2008) ("But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."). "Ordinarily," a plaintiff must "advance some colorable excuse for neglect" to avoid the dismissal of his claims against a particular defendant. Zapata, 502 F.3d at 198; Bogle-Assegai v. Connecticut, 470 F.3d 498, 509 (2d Cir. 2006); see McKibben v. Credit Lyonnais, No. 98 Civ. 3358, 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999) ("Good cause or excusable neglect is generally found only in exceptional circumstances where plaintiff's failure to serve process in a timely manner was the result of circumstances beyond his control. . . . [W]here . . . an attorney's ignorance, inadvertence or 'misplaced reliance' promulgated the failure to serve process, courts have shown no leniency.") (citations omitted). When such good cause is not found, the Second Circuit will not disturb a district court's determination under Rule 4(m) "so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." Zapata, 502 F.3d at 197.

In this case, the Plaintiff has submitted an affidavit of service upon the Defendant MVP, through personal service on Michael Ishida, its authorized agent for service of process. This affidavit of service is dated July 15, 2011, which is within the 120 days required by the Federal Rules. Therefore, the Court finds that this case should not be dismissed against MVP. However,

the Plaintiff is directed to move for a default judgment against this party within 60 days of the date of this Order, in order to avoid a dismissal for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

As for the other Additional Defendants, the Plaintiff has failed to comply with Rule 4(m) as there are no affidavits of service to indicate that these Defendants were served with a summons and complaint within 120 days of the commencement of this action. The Court must then determine whether it should extend the time to serve process; namely, whether there is a showing of good cause by the Plaintiff for failure to serve these defendants.

Certainly, the circumstances of this case do not indicate mere neglect. Cf. Hollomon v. City of New York, No. 04 Civ. 2964, 2006 WL 2135800, at *3 (E.D.N.Y. July 31, 2006) (a "delay in service resulting from the mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause") (quoting Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000)).

With regard to Wong, the Plaintiff's counsel has detailed substantial efforts that have been made to locate and serve this Defendant. These attempts can properly be characterized as diligent. Moreover, as there may be an FBI criminal investigation underway relating to Wong, the Plaintiff's claim that she is evading service appears to be plausible. Thus, with regard to Wong, the Court finds that the Plaintiff has demonstrated good cause. The Plaintiff shall have 60 days from the date of this Order to effectuate service upon Wong. In addition, this Court rejects any argument that Wong has already been served, but that the affidavit of service has been lost or cannot be accessed. The Plaintiff has offered no admissible proof in support of that contention.

As to the other four Defendants, the Plaintiff's efforts at serving these individuals and companies were undoubtedly not as diligent as those that were made to serve Wong. Although

the Plaintiff explains in great detail the numerous efforts it made to locate Wong, it appears to have only gone a few additional steps to attempt to locate the other remaining Defendants.

Nevertheless, in light of these additional steps, the Court finds there is the minimum good cause present in order to allow the Plaintiff additional time to serve these Defendants. The Plaintiff made extensive inquiries as to these individuals' and companies' locations, including hiring a number of investigators to assist with the process. See U.S. S.E.C. v. Shehyn, No. 04 Civ. 2003, 2005 WL 2990643, at *3 (S.D.N.Y. Nov. 7, 2005) ("This court's conclusion that the SEC has demonstrated 'good cause' is reinforced by numerous cases that have found 'good cause' when the defendant's whereabouts are unknown or otherwise difficult to discern."); Coleman v. Cranberry Baye Rental Agency, 202 F.R.D. 106, 109 (N.D.N.Y. 2001) ("Plaintiffs' counsel's affidavit describes three attempts to obtain information from her son, at least two contacts with an HUD investigator, contact with a private investigator who undertook a nationwide database search to locate her, and unsuccessful efforts to serve her at three different addresses in Florida."). This is not the case where there was a single defective attempt at service that was never followed by an attempt to correct service within the 120 day time frame. See Goodstein v. Bombardier Capital, Inc., 167 F.R.D. 662, 666 (D. Vt. 1996) (citing Quann v. Whitegate–Edgewater, 112 F.R.D. 649, 661–62 (D. Md. 1986) (finding no good cause shown when plaintiff knew that his initial attempt at service was ineffective, yet never successfully served the defendant)).

The relevant precedent "all point[s] to a finding of 'good cause' where, as here, the plaintiff struggles to locate and serve the defendant due to circumstances largely beyond the plaintiff's control." Shehyn, 2005 WL 2990643, at *3; Hawthorne v. Citicorp Data Systems, Inc., 219 F.R.D. 47 (E.D.N.Y. 2003). Cf. Naglieri v. Valley Stream Cent. High Sch. Dist., No.

05 Civ. 1989, 2006 WL 1582144, at *3 (E.D.N.Y. May 26, 2006) ("Moreover, counsel failed to exercise reasonable diligence in attempting to serve Ms. Edwards. He did not conduct any investigation in an attempt to locate Ms. Edwards' current address or actual place of employment prior to the attempted service."). It is apparent to the Court that the difficulties in serving the remaining Defendants are due to circumstances that are not within the control of Emerald or its attorney.

Therefore, because the Court has found "good cause" for the Plaintiff's delays in serving the Additional Defendants, the Court need not consider whether a discretionary extension is appropriate under Fed. R. Civ. P. 4(m). See Fed. R. Civ. P. 4(m), Advisory Committee Notes (1993 Amendments) (stating that Fed. R. Civ. P. 4(m) "authorizes the court to relieve a plaintiff of the consequences of an application of [Rule 4(m)] even if there is no good cause shown" ) (emphasis added); Feingold v. Hankin, 269 F. Supp. 2d 268, 277 (S.D.N.Y. 2003) (outlining and applying four-factor test to determine whether discretionary extension was appropriate); Goodstein v. Bombardier Capital, Inc., 167 F.R.D. 662, 666 (D. Vt. 1996) ("If good cause exists, the plaintiff receives an extension, and the inquiry is ended").

In sum, this action will not be dismissed against the Additional Defendants. The Plaintiff is directed to move for a default judgment against MVP within 60 days of the date of this Order, and to effect service of the summons and complaint upon the other Additional Defendants and file proof of that service within 60 days of the date of this Order. If the Additional Defendants are not served with the summons and complaint on or before that time, and if the Plaintiff fails to show cause, in writing, why service has not been effected, the action against these Defendants will be dismissed for failure to prosecute.

**B.  As to the Defendant Schaffer's Motion to Dismiss**

The Court will now address the Defendant Schaffer's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer for improper venue pursuant to 28 U.S.C. § 1406(a) or for convenience pursuant to 28 U.S.C. § 1404(a).

**1.  Personal Jurisdiction**

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the defendant.  See Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (citing Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)).  Where, as here, the parties have not yet conducted discovery, the plaintiff may defeat such a motion by making a *prima facie* showing of jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence.  Bank Brussels Lambert, 171 F.3d at 784; Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999).  Furthermore, materials presented by the plaintiff should be construed in the light most favorable to the plaintiff and all doubts resolved in its favor.  See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993).

Personal jurisdiction over a non-resident defendant in a federal diversity action is determined by the law of the forum state.  See Whitaker, 261 F.3d at 208.  Therefore, this Court must look to New York's personal jurisdiction statutes, namely the New York Civil Practice Law and Rules ("CPLR") Sections 301 and 302, to determine whether the Plaintiff has made a *prima facie* showing of personal jurisdiction over the out-of-state Defendant Schaffer.  Then, if jurisdiction is found, the Court must determine whether the exercise of such jurisdiction under

state law satisfies the federal due process requirements of "fair play and substantial justice." Burger King Corp., v. Rudzewicz, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945)); see also Bank Brussels Lambert, 171 F.3d at 784.

In Schaffer's original motion to dismiss for lack of personal jurisdiction, dated September 6, 2011 (Docket Entry No. 7), he contends in a conclusory fashion that his domicile is in Nevada and that he has not conducted business in the State of New York, so that he does not have the established minimum contacts with the state that would allow for the operation of jurisdiction under New York's long-arm statute.

In its opposition, the Plaintiff asserts that there is personal jurisdiction over Schaffer in this venue because he acted both directly and indirectly in New York and this District, including through Wong, his agent and co-conspirator. In particular, the Plaintiff alleges that he arranged and facilitated the $200,000.00 escrow deposit through Wong in this State, which he later converted to his own use.

As stated above, the Court must look to New York State law—namely, the CPLR —and assess whether there the Plaintiff had sufficiently put forth a *prima facie* case of personal jurisdiction over Schaffer at this early stage of the proceedings. The Plaintiff specifically asserts that there is jurisdiction over Schaffer pursuant to CPLR 302(a)(3), in which this Court may exercise personal jurisdiction over any non-domiciliary who commits a tortious act without the state causing injury to person or property within the state, if he expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. In fact, the parties devote much of their briefing to this specific provision of New York's long-arm statute. However, at first glance, it appears unlikely that the

Plaintiff can utilize this basis for jurisdiction, because the Plaintiff has not alleged that any of the Defendants, let alone Schaffer, derive substantial revenue from interstate or international commerce. Simply alleging that the Defendant Schaffer practices law in several states does not suffice for that purpose.

Nevertheless, the Court need not address whether or not the Plaintiff could assert jurisdiction over Schaffer pursuant to CPLR 302(a)(3), because the Court finds that the Plaintiff has sufficiently alleged jurisdiction over Schaffer pursuant to CPLR 302(a)(2).

To be sure, the Plaintiff does not specify any jurisdictional theory in the complaint, and in its opposition to the instant motion, the Plaintiff claims that the Defendant Schaffer is subject to the personal jurisdiction of this Court only pursuant to CPLR Section 302(a)(3). However, the allegations of the Complaint and the briefing by both parties largely focus on Wong's actions in this jurisdiction as an agent of the Defendant. Consequently, it appears to the Court that both Emerald and Schaffer have had adequate opportunities to address the merits of any assertion of personal jurisdiction premised on 302(a)(2), and thus the Court will assess jurisdiction under this theory. See, e.g., Boroumand v. Assar, 192 F. Supp. 2d 45, 51 (W.D.N.Y. 2001) (acknowledging that the plaintiff did not indicate the alleged statutory basis for personal jurisdiction, but nevertheless finding that the plaintiff made a *prima facie* showing that § 302(a)(2) was satisfied based on allegations made in an affidavit).

### a. 302(a)(2) Application

Pursuant to New York's long-arm statute, "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person *or through an agent*: . . . 2. commits a tortious act within the state." NY CPLR § 302(a)(2) (emphasis added).

Here, the Plaintiff alleges that Schaffer made tortious misrepresentations to Emerald in New York by telephone and in writing. However, the Plaintiff does not allege that Schaffer took any actions giving rise to a tort while physically inside New York. The Second Circuit has held that the law in New York State with regard to personal jurisdiction under Section 302(a)(2) is clear: personal jurisdiction arises under this section only pursuant to actions taken while physically within New York State. Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27–29 (2d Cir. 1997) (holding that, while some lower New York State courts have disagreed, the New York State Court of Appeals has not overturned its clear indication that physical presence in the state is a prerequisite for personal jurisdiction under Section 302(a)(2)).

However, the Plaintiff does allege that Wong took tortious actions while physically present in New York State, and personal jurisdiction under Section 302(a)(2) may also be predicated on acts taken by an agent. Whether a defendant's representative is an "agent" for purposes of § 302(a) hinges on whether the representative acted "for the benefit of and with the knowledge and consent of [the] defendant and [the defendant] exercised some control over [the agent] in the matter." Kreutter, 71 N.Y.2d at 467 (noting that whether a defendant's representative is an "agent" for purposes of § 302(a) turns on whether the representative acted "for the benefit of and with the knowledge and consent of [the] defendant and [the defendant] exercised some control over [the agent] in the matter."); CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 366 (2d Cir. 1986) (explaining that an "agent" for purposes of CPLR § 302(a) is a person who has "[1] acted in the state [2] 'for the benefit of, and [3] with the knowledge and consent of' the non-resident principal").

Moreover, New York "[c]ourts have defined 'agent' broadly to include not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators."

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).

Therefore, "[t]he New York activities of a 'co-conspirator' may also be imputed to an out-of-state defendant for purposes of personal jurisdiction under § 302(a)(2) under an agency rationale.". Shpak v. Curtis, No. 10 Civ. 1818, 2011 WL 4460605, at *8 (E.D.N.Y. Sept. 26, 2011). To establish jurisdiction on the basis of a conspiracy, a plaintiff must "make a *prima facie* showing of a conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy." First Capital Inv. Holdings LLC v. Wilson Capital Grp., No. 10 Civ. 2948, 2010 WL 4967833, at *2 (S.D.N.Y. Nov. 30, 2010) (citing Chrysler Capital, 778 F. Supp. at 1266). Thus, the Court considers whether: "(1) the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators." See Cleft of the Rock Foundation v. Wilson, 992 F. Supp. 574, 583 (E.D.N.Y. 1998) (Spatt, J.) (quoting Heinfling v. Colapinto, 946 F. Supp. 260, 265 (S.D.N.Y. 1996)).

With regard to an agency theory, it appears that Emerald has met its modest burden. See Solv–Ex Corp., 1997 WL 452023, at *1. First, there is no question that the Plaintiff has alleged that Wong took actions "in the state" of New York and "for the benefit of" Schaffer. Wong is alleged to have visited the Plaintiff's offices in New York, arguably to induce the Plaintiff to lend money that Wong then used for her own benefit and Schaffer used for his own benefit as well. See Allen ex rel. Allen v. Devine, 670 F. Supp. 2d 164, 171 (E.D.N.Y. 2009). Taking the pleadings in the best light for the Plaintiff, these allegations satisfy the first two factors. Still, whether these actions were taken with the "knowledge and consent" of Schaffer is a closer

question.  Nevertheless, based on the allegations, it appears that the Plaintiff has adequately pled these additional factors.

For instance, in the Complaint, the Plaintiff alleges that by reason of the designations and notations on the wire transfer instructions, Schaffer knew or should have known that Emerald believed that Schaffer was the attorney for MVP and that he would hold the $200,000.00 Escrow Deposit strictly in accordance with the terms agreed upon by Emerald and Eternal, but that Schaffer failed to disclose that he was not intending to act as, and/or was not acting as the attorney for MVP.  The Plaintiff also alleges that Schaffer knew that Emerald was relying on his fiduciary duty and public trust to maintain the $200,000.00 Escrow Deposit in accordance with the express terms delineated by Wong, and not to disburse all or any of that specific fund for any purpose.  In addition, the Complaint states that Schaffer and Wong were aware that Schaffer did not intend to hold and maintain the $200,000.00 Escrow Deposit strictly in accordance with the terms specified to the Plaintiff by Wong, but rather intended to disburse all, or substantial portions of such fund for the business and personal use of the Defendants.  Thus, it appears based upon the allegations in the pleadings, that Wong acted for the benefit of herself and Schaffer, and with the knowledge and consent of Schaffer, and that Schaffer exercised some control over her as the money was placed in Schaffer's escrow account.  Thus, on this ground alone, Wong's tortious acts in New York are imputed to Schaffer, and the Court may exercise personal jurisdiction over Schaffer under Section 302(a)(2).

With regard to conspiracy, there first must be a *prima facie* showing of a conspiracy. "[T]he bland assertion of conspiracy . . . is insufficient to establish jurisdiction for the purposes of § 302(a)(2)."  Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93–94 (2d Cir. 1975) (citations omitted). Cf. Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc., 26 F.

Supp. 2d 593, 601 (S.D.N.Y. 1998) ("Before jurisdiction based on a conspiracy can be upheld under New York law, . . . the plaintiff must allege both a *prima facie* case of conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy.") (internal quotation marks and citations omitted). To plead a cause of action for conspiracy, a plaintiff must allege the primary tort and the following four elements:

1. a corrupt agreement between two or more parties;
2. an overt act in furtherance of the agreement;
3. the parties intentional participation in the furtherance of the plan or purpose; and
4. the resulting damage or injury.

Kashi v. Gratsos, 790 F.2d 1050, 1055 (2d Cir. 1986); Chrysler Capital Corp., 778 F. Supp. at 1267.

In the Court's opinion, the Plaintiff has alleged the existence of an agreement intentionally to use deception—namely, misrepresentations—in an effort to misappropriate the Plaintiff's funds, thereby causing injury. To be sure, the Plaintiff has not alleged the existence of an actual written or oral agreement between Wong and Schaffer that set out the parameters of their alleged scheme. However, the Plaintiff does allege that each of the Defendants were aware and knowledgeable: (1) of Wong's efforts to induce the Plaintiff to make the $200,000 deposit; (2) that Schaffer was not acting for or in the capacity of MVP's counsel in regard to the $2 Million Financing; and (3) that Schaffer did not intend to hold and maintain the $200,000.00 Escrow Deposit strictly in accordance with the terms specified by Wong, but rather intended to disburse all, or substantial portions of such fund, for the business and personal use of the Defendants. Thus, the clear implication of these allegations is that there was an agreement between the Defendants.

The Plaintiff has also alleged a number of overt acts that were made in order to induce the Plaintiff to deposit the funds. In this regard, the Defendants' intentional participation in furtherance of the conspiracy may be inferred from the overt acts taken by them. See Andre Emmerich Gallery, Inc. v. Segre, No. 96 Civ. 889, 1997 WL 672009, at *5 (S.D.N.Y. Oct. 29, 1997) ("Defendants' intentional participation in furtherance of the plan could be inferred from the letter that defendant sent to [the plaintiff]."). Finally, the last element is satisfied since the Plaintiff claims to have suffered a financial loss, totaling approximately $200,000.00, from the alleged scheme. The Court finds that these allegations establish, for the purposes of this motion, a corrupt agreement and the Defendants' intentional participation in furtherance of the agreement.

Notably, the Court recognizes the oft-cited proposition in conspiracy law that a conspiracy can rarely be proved by direct evidence, and is instead

> usually established by circumstantial evidence based upon independent proof of each alleged co-conspirator's acts, conduct and statements and the totality of conduct of all the participants and the reasonable inference to be drawn therefrom.

Grosser v. Commodity Exchange, Inc., 639 F. Supp. 1293, 1310 (S.D.N.Y. 1986) (internal citation omitted). "For this reason, the Second Circuit has held that in a case where the plaintiff has submitted evidentiary facts tending to connect the defendant to New York transactions, the conspiracy/jurisdictional issue should not be resolved and the complaint dismissed without discovery." Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913, 1992 WL 236208, at *8 (S.D.N.Y. Sept. 8, 1992) (citing Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1343-44 (2d Cir. 1972)).

To demonstrate that Schaffer has sufficient connections with the alleged tortious acts of the co-defendants in New York—namely, Wong—the Plaintiff must show that "(1) the out-of-

state co-conspirator had an awareness of the effects of the activity in New York, (2) the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators." Heinfling v. Colapinto, 946 F. Supp. 260, 265 (S.D.N.Y. 1996) (citing Chrysler Capital Corp., 778 F. Supp. at 1269).

The Court finds that the Plaintiff has alleged facts sufficient to establish Schaffer's co-conspirator status for purposes of conferring personal jurisdiction at this early stage of the proceedings. The Plaintiff alleges that Schaffer was a full-fledged participant in virtually every one of Wong's alleged misdeeds. Certainly, there are allegations that Schaffer was aware of the effects of the activity in New York; that Wong's activities were for his benefit; and that she acted on behalf of Schaffer in requesting that the funds be transferred into Schaffer's escrow account. At the core of this alleged conspiracy was that Schaffer facilitated it by accepting and then disbursing the $200,000.00 through his attorney trust account. Hence, Schaffer's supposed role in this conspiracy was to supply a critical and necessary part of the scheme to defraud.

Even if Schaffer did not take part in the conspiracy until after Wong made the fraudulent statements to the Plaintiff, this is not critical. The mere "joining of the conspiracy, adoption of its goals, and action in furtherance of it," would constitute "a ratification of those acts already committed with the purpose of accomplishing the same goal." Dixon v. Mack, 507 F. Supp. 345, 350 (S.D.N.Y. 1980).

Furthermore, all of the allegations after the funds were removed from the escrow account may provide significant circumstantial evidence as to Schaffer's role in the conspiracy. According to the Plaintiff, Schaffer admitted to taking the funds and then promised the Plaintiff

that he would act to recover the money and pay the Plaintiff back. If Schaffer had no part in the alleged conspiracy, then these actions are, at best, highly questionable.

Of importance, the Plaintiff is only required at this stage of the proceedings to make a *prima facie* showing of personal jurisdiction. See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). Schaffer's denial of many of the allegations concerning the general connection between him and Wong, and specifically with regard to the $2 Million Financing, go straight to the heart of this case. If Schaffer's allegations are taken as true, then he would likely be absolved of liability. However, it is inappropriate for the Court to utilize the Defendant's refutations at this stage to preclude the exercise of personal jurisdiction over him. In other words, "[w]here, as here, the facts of the case itself are so intertwined with the jurisdictional issue, the Court is well within its discretion to deny the motion to dismiss for lack of personal jurisdiction." U.S. v. Machat, No. 08 Civ. 7936, 2009 WL 3029303, at *8 (S.D.N.Y. 2009); Shpak, 2011 WL 4460605, at *8 ("The complaint here adequately alleges that defendants, through Simon as their agent or co-conspirator, committed a tortious act in New York, and the Court, therefore, may exercise personal jurisdiction over defendants as to the causes of action set forth in the complaint."); see also Family Internet, Inc. v. Cybernex, Inc., No. 98 Civ. 0637, 1999 WL 796177, at *7 (S.D.N.Y. Oct. 6, 1999) ("A court's inquiry concerning jurisdiction is distinct from an inquiry concerning the bona fides of a plaintiff's causes(s) of action. Nevertheless, the exercise of jurisdiction pursuant to [§ 302(a)(2)] requires, at a bare minimum, that the complaint adequately allege a tortious act committed by [the defendant].").

Undoubtedly, "if the ultimate facts do not bear out jurisdiction by a preponderance of the evidence, the case will later be dismissed for lack of personal jurisdiction as well as on the merits." Machat, 2009 WL 3029303, at *8. Cf. First Wall St. Capital Corp. v. Int'l Prop. Corp.,

Ltd., No. 97 Civ. 0702, 1998 WL 338105, at *4 n.2 (S.D.N.Y. June 24, 1998) (explaining that when the question of jurisdiction and merits are intertwined, a plaintiff need not show personal jurisdiction by a preponderance of the evidence prior to trial).

In sum, Schaffer is alleged to have been aware of Wong's acts; to have benefited from them; and to have supported them. Under the co-conspirator or agency theory, Wong's allegedly tortious acts in New York are therefore imputed to Schaffer, and the Court may exercise personal jurisdiction over Schaffer pursuant to Section 302(a)(2).

### b. Due Process Considerations

Although the exercise of personal jurisdiction over Schaffer is allowable under CPLR § 302, the Court must also assess whether the exercise of this jurisdiction comports with due process. In particular, it must determine whether the Defendant has "certain minimum contacts with [New York] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Under this analysis, this court considers whether "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d. 490 (1980).

The Court finds that the exercise of jurisdiction over Schaffer comports with the due process requirement. "By joining the conspiracy with the knowledge that overt acts in furtherance of the conspiracy had taken place in New York, [the Defendant] purposely [availed himself] of the privilege of conducting activities within the forum state." Dixon, 507 F. Supp. at 352. Indeed, "[t]he Defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Id. As such, although Schaffer

resides and does business in either Nevada or Texas, the Court finds that the Plaintiff has alleged Schaffer's requisite minimum contacts with New York.

The Court further finds that it is "reasonable" to bring this litigation in New York. First, New York has an undeniable interest in providing redress to its own citizens. The Plaintiff, a corporation, is a citizen of the State of New York. The locus of the tort is in New York. The tortious acts that serve as the basis for this lawsuit, specifically, the initial meetings in April 2009 which laid the foundation for the defendants' alleged fraudulent schemes, occurred in New York. The money was disbursed from New York. The injury to the Plaintiff occurred in New York.

In this regard, the Court acknowledges the potential burden on Schaffer of defending a law suit in New York. However, "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." Metropolitan Life Ins., 84 F.3d at 574. Therefore, the Court concludes that this factor alone, "falls short of overcoming the [Plaintiff's] threshold showing of minimum contacts." Id. Moreover, as will be set forth in further detail below, the Defendant will have an opportunity to raise any concerns he has with regard to venue later in this litigation.

Therefore, the Court finds that the exercise of personal jurisdiction over Schaffer comports with due process.

**2. Venue**

In addition to moving to dismiss the Complaint for lack of personal jurisdiction pursuant to 12(b)(2), Schaffer has also moved, in the alternative, to transfer venue pursuant to either 28 U.S.C. § 1406(a) or 1404(a), or dismiss the action altogether for improper venue.

Under Rule 12(b)(3) of the Federal Rules of Civil Procedure, a district court may dismiss an action based on improper venue. Upon such a motion, a court has the authority to dismiss an action pursuant to 28 U.S.C. § 1406(a), which provides in pertinent part:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a) (emphasis added). Section 1406 authorizes the transfer or dismissal of an action where the original venue is improper. In contrast, Section 1404(a) provides for the transfer of an action where both the original and requested venue are proper. "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005) (citing Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999)). In deciding whether to transfer a case, courts should be mindful that "an expeditious and orderly adjudication of cases and controversies on their merits," is often the preferred course. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466–67, 82 S. Ct. 913, 916, 8 L. Ed. 2d 39 (1962).

Here, the Complaint asserts that the court has diversity jurisdiction over this action and that venue is premised upon 28 U.S.C. § 1391(a)(1) and (2). These subsections state:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in,
> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> [or]
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. . .

It is important to note that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

Schaffer maintains that because this Court lacks personal jurisdiction over him, venue is also improper and that the Court should therefore dismiss the case or transfer venue pursuant to § 1406(a). In particular, he argues that all of the Defendants are domiciled in either Nevada or California, so the matter should be transferred to one of those districts where venue is proper.

However, the Defendant's argument is unavailing because the Court does have personal jurisdiction over Schaffer pursuant to New York's long-arm statute. In any event, venue in this district is proper because this is where "a substantial part of the events or omissions giving rise to the claim occurred." See First Capital Inv. Holdings LLC v. Wilson Capital Group, LLC, No. 10 Civ. 2948, 2010 WL 4967833, at *3 (S.D.N.Y. Nov. 30, 2010) ("It is evident from the complaint that many significant events giving rise to the claim occurred in New York. Most notably, the defendants notified the plaintiffs that they deposited the standby letter of credit at a bank account in New York and Laues and James allegedly made false representations to the plaintiffs at a meeting held in New York on September 2, 2009."); Gruntal & Co., Inc. v. Kauachi, No. 92 Civ. 2840, 1993 WL 33345, at *2 (S.D.N.Y. Feb. 5, 1993) (finding venue proper in a diversity common law fraud action because telephone calls were made to the plaintiff in the district, in which fraudulent representations were made). Emerald's offices are in the Eastern District of New York where the allegedly fraudulent statements were made, and Emerald's bank account from which it wired funds is also located here. Thus, Section 1406 is inapplicable and the Court denies Schaffer's motion to dismiss or transfer based on improper venue.

On the other hand, as mentioned above, under Section 1404(a), even if venue is proper, a district court may transfer an action to any other district in which the action might have been brought if the transfer would be in the interest of justice and serve the convenience of parties and witnesses. "In considering whether a transfer would be for the convenience of the parties and witnesses and in the interest of justice, '[t]he plaintiff's choice of forum is entitled to substantial weight and will not be disturbed lightly.'" Schechter v. Tauck Tours, Inc., 17 F. Supp. 2d 255, 260 (S.D.N.Y. 1998) (quoting Thunder Island, Inc. v. A.G. Sport, Inc., No. 97 Civ. 4136, 1997 WL 599414, at *1 (S.D.N.Y. Sept. 26, 1997)). Courts are urged to consider "(1) the convenience to the parties, (2) the convenience to the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the cost of obtaining willing witnesses, (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively, and (7) the interests of justice." Id.

However, although Schaffer is the one who originally requested this form of procedural relief, the Defendant himself has simultaneously requested that this Court decline to rule on the motion until such time as all the other Defendants have been served, in order to avoid multiple hearings on the issue of venue and to economize this Court's resources. The Court agrees that the motion at this time is premature. A Section 1404(a) motion to transfer requires an analysis of several factors, including convenience to witnesses and parties and the locus of operative events. See James Wm. Moore et al., 17 Moore's Federal Practice ¶ 111-65 to 111–67 (3d. ed. 1999). The Plaintiff now has an additional opportunity to reserve several named Defendants pursuant to this Order, and until the Court is able to identify all of the parties in the case, uncertainty exists concerning whether these factors favor transfer.

Thus, the motion to transfer venue is denied at this time without prejudice to a future application by any party, including the Defendant Schaffer, to transfer the case to another district pursuant to 28 U.S.C. § 1404(a).

## C. As to the Plaintiff's Motion for Sanctions

As a final matter, the Court will address the Plaintiff's motion for sanctions against Schaffer pursuant to Federal Rule of Civil Procedure 11 ("Fed. R. Civ. P. 11" or "Rule 11").

On September 6, 2011, Schaffer filed notice of his motion to dismiss. In support of this motion, the Defendant filed a two page "Memorandum of Points and Authorities" and a five paragraph declaration. Pursuant to Local Civil Rule 7.1, all motions must include

> (1) A notice of motion, or an order to show cause signed by the Court, which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion;
> (2) A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined; and
> (3) Supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion.

The Plaintiff technically complied with all of the Local Rule's requirements for the filing of the motion. However, according to the Plaintiff, the motion was so lacking in analysis as to arguably be frivolous. Consequently, in response to this motion, the Plaintiff initiated a motion for sanctions against Schaffer. The Plaintiff submits that Schaffer's papers are "so obviously and plainly wholly insufficient, conclusory and infelicitous for any purpose in respect of what is required in and for a valid, or even colorable motion to dismiss or application to transfer venue, and so obviously a ruse and stratagem that was part of an effort to delay and vexatiously protract the proceedings", that sanctions against the Defendant are warranted. (Pl. Opp. at 3.)

Rule 11 governs motions for frivolous filings. "A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after

reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law." See Kropelnicki v. Siegel, 290 F .3d 118, 131 (2d Cir. 2002) (internal citations and quotations omitted).  Courts impose Rule 11 sanctions with discretion and caution.  See Caisse Nationale de Credit Agricole–CNCA v. Valcorp., 28 F.3d 259, 264 (2d Cir. 1994); Puccio v. Town of Oyster Bay, 229 F. Supp. 2d 173, 178 (E.D.N.Y. 2002).  In response to the motion for sanctions, Schaffer contends that the motion is procedurally improper because the Plaintiff only sent him piecemeal notifications regarding its intentions, thereby not complying with the relevant safe harbor provisions.  Moreover, he disputes that the motion is without merit.

Putting aside whether or not the Plaintiff complied with the procedural rules applicable to a motion for sanctions, the Court has reviewed the parties' arguments and declines to award sanctions against Schaffer based on the filing of this motion.  While the Defendant's arguments and analysis are quite terse, the Court does not find that the motion was filed with an improper purpose or in bad faith.

In his submissions to the Court, Schaffer explains that he thought the money in his escrow account was "free and clear", and that he was under the belief that he was permitted to use it for his own means.  The Plaintiff claims that this goes against the clear weight of the evidence, because the wire transfers stated that they were for "BRIDGE LOAN ETNL", with ETNL referring to Eternal.  However, the Court does not find that this evidence alone renders Schaffer's position so frivolous as to warrant sanctions.  Moreover, everything else the Plaintiff points to are really indicative of factual disputes, and thus the Defendant's averments do not constitute sanctionable conduct.

Nothing here advanced by the Plaintiff's counsel rises to the level of the extraordinary circumstances so as to warrant Rule 11 sanctions. See Park v. Seoul Broadcasting Sys. Co., No. 05 Civ. 8956, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008) ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances.") (citation omitted). Therefore, the Plaintiff's motion for sanctions against Schaffer pursuant to Rule 11 is denied.

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Plaintiff is directed to serve the summons and complaint upon the Additional Defendants other than MVP within 60 days of the date of this Order; and it is further

**ORDERED,** that the Plaintiff is directed to move for a default judgment against Defendant MVP within 60 days of the date of this Order; and it is further

**ORDERED,** that Defendant Schaffer's motion to dismiss or in the alternative to transfer venue is denied; and it is further

**ORDERED,** that the Plaintiff's motion for sanctions is denied.

**SO ORDERED.**
Dated: Central Islip, New York
September 6, 2012

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge